Case number 243260, USA v. Kevin Daniels. Argument not to exceed 15 minutes per side. Mr. Belli, you may proceed. May it please the Court, Counsel for the Government, my name is Dennis Belli. I represent Kevin Daniels who appeals from convictions and a sentence for a Hobbs Act robbery and a related firearm count. I would like to reserve three minutes of rebuttal time. The brief raises several issues. Obviously, I cannot address all of them. I'm going to zero in on issue number four, which is the challenge to the jury instructions. The case against Mr. Daniels was weak. Sure, he fled from the police, was found with the loot from the robbery in his vehicle along with the disguise, and he made incriminating statements. But the law is clear that under the Fifth and Sixth Amendments, the government must prove every element of the crime beyond a reasonable doubt, and that includes the interstate commerce element. That's the element that takes a garden variety robbery out of the state courts and into federal court. The Court instructed the jury, it is not necessary for you to find there was an actual effect on interstate commerce. That instruction comes from this Court's pattern instructions on Hobbs Act robbery, and in the commentary to the instructions, there's a caution that that language is only supposed to be given in a conspiracy or an attempt case. We submit that the giving of this instruction was plain and obvious error. The controlling decision in this circuit is United States v. D. Carl Antonio, and that case extensively discussed the difference between attempt, inchoate crimes, attempt and conspiracy versus a completed Hobbs Act violation. So what if we jumped to the prejudice prong, which you have to prove in plain error, and it seems like there wasn't a – at least our case law seems to interpret the effect that is required to be quite minuscule. If you rob an entity that has materials that have moved in interstate commerce, that might be enough. Here, I mean, the argument would be your client robbed a whole bunch of cell phones, and those cell phones could have been sold into interstate commerce, and so that would just clearly show an effect on interstate commerce, so you can't show prejudice. That's true, and the cases that Judge Murphy, you are citing, have generally to do with sufficiency of the evidence, which is a different standard than deciding whether the failure to give a – or the giving of an erroneous jury instruction was prejudicial. Okay, so it's not – let's accept that it was erroneous, wrong topic case. This is actual Hobbs Act. It's not automatically reversible error. It has to be prejudicial, so given the facts in this case, why should we reverse on that error? The defense must – on appeal must show a reasonable probability that the erroneous jury instruction affected the outcome of the jury trial, and what's remarkable about the record in this case is what little effort the government made to prove the interstate commerce element. In the typical Hobbs Act robbery case, they bring in somebody from the business management to say, this is our business, we receive goods from out of state, bring them into the state where the crime occurred, this has an impact on our finances, something along that line, and the government did absolutely nothing. But if the government – if you had raised the objection, is there any way that the government would not have been able to show that these cell phones were produced out of state? I mean, there just has to be a nexus to interstate commerce, so the cell phones had to have been manufactured in China and then imported here. There was no evidence of that. I realize we think we know where cell phones are manufactured, China, South Korea, but you need evidence in the record, and maybe a good example is – Aren't juries allowed to rely on their common sense inferences and the facts that they know about the world? It's been in the news a lot. No, I don't think so. They can apply their common sense. They can apply what they know about human nature, about how things work. But – well, I'll draw an example. There's the case of a bank robbery. In order to prosecute it in federal court, the bank must be licensed by the FDIC or have FDIC insurance, and there's case law that says that leaving that up to the jury without some evidence, a certificate, is not going to cut it. So there is no – Were there cell phone manufacturers in Ohio? I don't think so. But this court is confined to the record. And even given that, remember, it's still up to the jury to decide whether there's an effect on interstate commerce. Just because an appellate court says in a particular case that this evidence was produced, a reasonable fact finder could find this particular element beyond a reasonable doubt, doesn't mean that the jury that's hearing the case, the jury that is incorrectly instructed, is going to reach that decision. Right, but if that were correct, then we'd automatically reverse in whenever there's an error in the jury instruction. And I think the Supreme Court pretty clearly told us that was not the way to do things in United States v. Nieder when the jury wasn't instructed on an entire element of the crime. They were just – it was just left out. And the Supreme Court says, well, but nobody could think that this element, which was materiality, nobody could think that withholding $5 million from your bank statements wasn't material, so even though there was no proof of materiality and they weren't instructed on it at all, the judges can just say that. I mean, I might agree with you on the principle, but that's not what the Supreme Court told us to do. I think the court is referring to the Johnson case, which I believe was – Johnson and Nieder are both about materiality. And Nieder, yes, yeah. But I haven't read those cases recently, but I think that there was not much question that the government's produced ample proof of the omitted element from the jury instructions. But what we're saying here – There is evidence here. There's an investigator who was asked, was there any investigation done with regard to T-Mobile's business operations? And the investigator responded, yes, T-Mobile. It's obviously a cellular phone company. It's based out of Germany. They operate in multiple different countries. Here in the United States, they import phones from overseas, and then they're sold across the nation. Was there any indication of whether or not the phones were manufactured outside of Ohio or the country? Yeah, they're all made outside the country. We're talking about the phones at issue here. Yes, the phones stolen here. So this is an investigator testifying, which suggests that this is the type of evidence that would be sufficient to show an effect, I would think. Well, it would be sufficient for a properly instructed jury to reach that conclusion. But here the government – Isn't it a kind of undisputed evidence? Like if there was a dispute of fact about whether – I could see why this instruction might matter, right? If there was competing evidence, whereas, oh, no, there is actually a place in Cleveland that manufactures the T-Mobile. And then the court had to find an effect. I could see where it would matter then. But there's no competing evidence in this case. So that's why I struggle to see the prejudice, even though I think you have a valid point on the instruction. Well, the assistant U.S. attorney was making the argument that, look, these phones and cash, they may have been recovered immediately, but the police did not return those items to the store until two days later. Therefore, it impacted their ability to do business. And there was no testimony of that. We know from the testimony of one clerk that half of the inventory was still in a safe that had a timer, and the robber wasn't willing to wait for that. So that was very hypothetical. And – What do you think – yeah, it is dubious – amorphous, I guess, is the right word. It's amorphous. What does affect interstate commerce mean? Does it – has the court said stuff on this? Does it mean just the scope of the Commerce Clause itself, which the court has taken to be quite broad? So an intrastate sale might be enough under kind of Wickard v. Filburn reasoning? Or does it mean more than that? It seems to me that at least our precedent, as I have noted, we've treated it awfully broad. And the inability to sell a cell phone might itself be sufficient, even for a short time. Well, again, yeah, the case law is broad. And from a sufficiency standpoint, that testimony would be sufficient to uphold a verdict rendered by a properly instructed jury. But it's our argument that the jury – the juries are the triers of the fact, and it's ultimately their conclusion. The government relies on Taylor v. United States, which was – involved an attempted robbery of some drug dealers. And there was a lot of controversy between the majority opinion and the dissent about what is in effect on interstate commerce. And it's still an area in evolution, it would seem. The majority did say a single robbery of drugs is enough. But I guess your distinction would be that these were returned, that the phones were – Well, yeah, they were not out of the possession of the victim long enough to have made a – resulted in an effect on interstate commerce. And in that Taylor case, the writer of the majority opinion went on to say at the end of the opinion, now, this only applies to robberies of drug dealers and no other cases, and we'll leave it to other cases to address what an effect on interstate commerce is. So it's an area of law that's far from settled. Thank you. Thank you. Thank you. We'll hear from the government. Good afternoon. Mary Beth Young on behalf of the United States. Like Mr. Belli, I'll concentrate on the interstate commerce issue. Before turning to the third and fourth prong, I want to push back just a little bit on the second. This was, as Mr. Belli agrees, never objected to. This is on plain error review. So we're not looking at an either type harmless error analysis, which would have been a Chapman v. California, beyond a reasonable doubt standard. We've got to reach the more usual, not constitutional, reasonable probability standard. On that second prong, though, the government submits this is not plain error, although to be sure, if you look at the pattern instructions, the material that was used is bracketed. It was designed to be used in attempt on conspiracy cases. As it happens, however, that same language, that an actual effect is not required, appears in multiple of this court's cases, and it's not limited in its use to attempts. It's sort of a second line of cases, separate from De Carlantino, tracking back Watkins, Davis, Peete, and Peete was citing a Seventh Circuit case called Staszuk. Staszuk was a completed Hobbs Act extortion, and it was involving a situation where the extortion was complete. It was an extortion in connection with whether a hospital could be built. For unrelated reasons, the hospital ended up not being built. So the Seventh Circuit was considering, well, what do we do with that? Because actually, it turns out there wasn't an effect on interstate commerce because it fizzled. And the court concluded, no, it's not necessarily that there'd be an actual effect for this completed extortion, but rather a reasonable probability. Setting aside the precedent, how would it be consistent with the statute? Whoever in any way or degree obstructs, delays, or affects commerce by way of robbery, I didn't say the whole thing, affects commerce or the movement of any article or commodity in commerce. It seems to me, I suppose you could have obstructs or delays as the alternative, but it seems to me affects commerce is an element of the claim. Affects commerce is part of the statute. What the language we're looking at here is actual effect. Now, this court repeatedly has used Peete, Davis, Watkins, and said an actual effect is not required, including in cases that involve completed offenses, but rather a reasonable probability suffices. Essentially interpreting effects in the statute to be satisfied by a reasonable probability. What is the basis for that? That just strikes me as a strange interpretation. Is there any reasoning in it? Well, I think, looking back to the facts of the Stasov case, which we cite in our brief, which Peete relied on, if you look at that, at the moment the extortion was complete, so there's been this payoff in regard to zoning related to a hospital. At that moment, there was a reasonable probability that commerce would be affected. Now, whether you're going to interpret that to satisfy the statutory effects language relates back to, well, what do we think is the constitutional scope of the Commerce Clause? Because the Supreme Court has repeatedly said the Hobbs Act reaches the full commerce power. So do you think that if someone is targeting something like a hospital that's clearly, if this went forward, would have impacted interstate commerce, that's within the constitutional commerce power? Yeah, that was going to be my question. Is it the theory would be, under Wickard-type reasoning, that an activity which in the aggregate affects commerce can be regulated in the specific individual case, even if the individual case does not affect commerce? Even if it didn't materialize. And this is a step easier than Taylor, because we're not talking about intrastate cell phone manufacturers here. But rather, you extort zoning about hospitals, you rob cell phone stores. We don't care whether you were caught a mile down the road. The practice of robbing a cell phone store affects commerce, whether or not it actually affects. Now, linguistically, there's some difficulty there. But on plain error review, and with Taylor, and with this court having used this language over and over, Pete Watkins Davis, Wong, Mr. Bentley quotes Wong on this point, but he's quoting from the part that's focusing on the fact that Wong involved an individual. Earlier in the opinion, when Wong was talking about businesses, it sets forth this language, talking about the de minimis standard, an actual effect is not required. Reasonable probability is enough. So on plain error review, we don't think you even get past the second prong. But when you get to the third. I was going to just one one quick final question on this issue, because I find it interesting. So we have precedent that suggests both cars and cell phones are articles of interstate commerce. Query whether a special rule would apply to the theft of articles of interstate commerce. I have written a concurrence where I disagreed with the rule, but it's well established in our precedent. And I suppose there was there no argument made that if you buy articles to instrumentalities. So in use, yes. We didn't make that argument for cell phones not activated in a box. OK, I see. You know, maybe I should have. Third prong and fourth. As your honor points to, there absolutely was evidence that these are phones manufactured out of state. Not only that, there was evidence which I don't think really should matter. Why do we care? At the moment, the robbery is complete. That should either be a Hobbs Act robbery or not. Are we really going to retroactively say it? Nope. We got to wait and see how fast the law enforcement finds the phones and gets them back to the store. That's a goofy rule, right? Here, even if you want to use that rule, it was, quote, several days. And certainly you don't have to go to the next level of, well, what is it that you would have done? That's the whole point of the de minimis standard. Do you think that affects commerce is satisfied by the mere fact that the phones are interstate and that they're stolen? Why shouldn't it be maybe the government should have to show that the phones would have been sold by the particular T-Mobile store into interstate commerce? So an out-of-state person would have come and bought the phone. Now, that would be quite ‑‑ I acknowledge that would be a quite difficult burden on the government's part, but that's when I think about interstate commerce, at least in the literal sense. The fact that a store has purchases from out-of-state is pretty well established that that's enough. Why do you think that is? I don't understand why, but I agree with you that it seems well established that affects commerce. Well, I mean, it's just upstream rather than downstream. I'm happy to entertain questions on that or any other issue. So if it was incorrect, assuming I hear your argument otherwise, what then? Not reversible, because plain air review, he can't meet the third or fourth prongs. Is there any prejudice? No, because we don't think that there's a reasonable likelihood that a jury would have found differently if you struck the one line he didn't care for. We also argued that even if the one line was problematic on its own, if you look at the context of the jury instruction as given, this one line, there doesn't have to be an actual effect, follows a bit about it's enough if the robbery made goods unavailable to the store and then continues, there doesn't have to be an actual effect. And given that ordering, we think the jury would have understood that to mean it's enough if it makes goods unavailable. You don't have to do the next bit and be like, okay, but T-Mobile, did you really have a bunch of customers the next day, et cetera. So even in context, we think that is another reason that there wasn't plain air at the second prong stage. And perhaps another reason in the third as well. If a defendant in this context wanted to challenge that element and wanted to show that it had no effect whatsoever and not even on their buying habits, is that irrelevant? I mean, would you argue that none of this can come in? Because the mere fact that it was imported into the state, everything else is irrelevant. It's a de minimis standard. So I wouldn't say irrelevant, but I would say it would be an uphill battle once you have checked the box that this came from out of state and you're talking completed robberies, so there is a deprivation of assets. Different matter if you haven't completed the robbery, but once you've deprived assets of a business that is an interstate business, I'm not sure. I mean, would you be arguing to the judge that none of it can come in? It doesn't matter how many customers they have on a Tuesday or whatever. I don't think I see those arguments, but it could be possible to make them, frankly. And in any event here, Judge White, we go beyond the simple, it's an interstate business and it was a robbery because of the fact that we know, even if we care, they didn't have the phones, $10,000 worth of phones for three days. Can I, if we're done on this topic, I have one other question to ask. So on the sentencing stuff, I had one question about the criminal history score. And it was, so this is a complicated criminal history score, but apparently there was a Hobbs Act conspiracy case that counted towards his criminal history. And it was appropriate, it seems to me, for the court to take that Hobbs Act conspiracy or crime of violence 924C into account at the time. But then as I understand the record, what happened is that the district court who imposed that sentence issued some type of Latin phrase, quorum nobis or whatever and invalidated it. So I don't think it was air at the time because it was still, at least I think how the guidelines work, it was still an appropriate conviction and you can't collaterally attack it at the time of sentencing. But since it's been invalidated since then, I think we have precedent that suggests we have discretion to remand to perhaps redo the resentencing because of this since invalidated conviction. And it doesn't necessarily, I don't know where that discretion comes from. It's the Farley case and it's all one paragraph of little reasoning. But what's the best arguments for why we shouldn't exercise that discretion here? Yeah, so I think that the discretion comes, I'm not sure whether Farley cited... Cited Cox, the Second Circuit. Yeah, I think from 2106, 28 U.S.C. 2106 is the arguable source of the court's authority to do that. The Second Circuit, Cox is a published case. The case you mentioned, this court has done the same. This is the same statute that like the Supreme Court uses to GVR. And the United States has not argued that this court would not have authority to do that. However, the circumstances of this case are peculiar. And this all agree, including the Cox case, including this court's previous precedent. This is a discretionary matter. Mr. Daniels participated in a completed Hobbs Act robbery in 2005. For whatever reason, it was charged as a conspiracy. We didn't know any better back in the day. And a 924C was attached to it. And the way it was packaged, only 12 months were on the Hobbs Act, 60 on the 924C. As you know, Quorum Novus has knocked out the 924C. We're left with this non-representative 12 months on the Hobbs Act that is not counting because it's not 13 months or more. And in these circumstances, we think the court should be very careful about the idea that when there is no error, the district court has not erred at sentencing, that we're going to remand because of some new factual development. Because, of course, the varieties of factual development have no end. I mean, the court would have complete discretion, right? There's still another offense? The court would. And to be fair, if this court remanded, the United States would argue below, well, the criminal history is underrepresented because the Hobbs Act hasn't been counted. Yeah, but he did get a much more significant benefit because even at the time of sentencing, right, the district court theoretically should have been statutorily bound to impose a 25. That was the United States' position. But so the United States did take a cross appeal and then dismissed the appeal because of the Quorum Novus Act? Correct. All right, your light is on, so thank you very much. Thank you. And we will hear a rebuttal.  The government states that in several Sixth Circuit cases, the court had held that an actual effect on interstate commerce is not required. Well, there's U.S. v. Pete that involved an attempted extortion, and I believe that there's another case that also involved an inchoate crime, so I don't think that case law helps. Now, it's interesting, the government has cited Wang. This court in United States v. Chance, which is cited in the government's brief, followed Wang, and two of the victims in that case were bookmakers, and they were allegedly extorted by some mobster types, and the court said that the evidence of the extortion of the bookmakers had an impact on interstate commerce was insufficient, and the court cited the fact that there were no details about the bookmakers' business, how much they drew in, who their customer base was, testimony along that line. So I think Chance is a good authority supporting our position that the government clearly failed to present a strong case on the interstate commerce element, and then that goes back to our argument that that's why this erroneous instruction was prejudicial, and I should emphasize that the assistant U.S. attorney quoted this erroneous instruction in her argument and relied on it to a great extent that, hey, the government has proved the interstate commerce element because we don't have to show an actual effect on interstate commerce. So that's another factor that the court needs to consider in deciding whether the defendant has shown prejudice. And as far as the criminal history, we have cited the course that has discretionary authority. The other issue that the court may want to consider is the fact that the U.S. Sentencing Commission has proposed amendments that may affect this physical restraint enhancement that the court below applied. The Sentencing Commission resolved a circuit split, and unless Congress intervenes, and I don't think they ever have intervened, the guideline is expected to go into effect in November. What's the change going to be? Let's see here. Okay, it's going to add language saying that the enhancement requires proof that the offender restricted the victim's freedom of movement through, quote, physical contact or confinement such as being tied, bound, or locked up. What about maced? That would qualify as physical contact maybe. Well, I think we'd start getting into double counting if that was used for the physical harm enhancement. All right. Mr. Belli, I see you were appointed pursuant to the Criminal Justice Act, and you have acquitted yourself very well on behalf of your client, and we thank you for accepting the appointment.